# SUPREME COURT OF THE UNITED STATES

## JACOB TOWNLEY HERNANDEZ *v.* SUZANNE M. PEERY, WARDEN

### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 20–6199.   Decided June 28, 2021

The petition for a writ of certiorari is denied.

JUSTICE SOTOMAYOR, dissenting from the denial of certiorari.

Petitioner Jacob Townley Hernandez's former codefendant became a key prosecution witness at Townley's trial.[1] The trial court, however, forbade Townley's attorney from speaking with his client about the existence or contents of a declaration executed by that witness. Although the State does not dispute that this order unjustifiably interfered with Townley's constitutional right to consult with his counsel, the California Supreme Court held that reversal of Townley's convictions would be appropriate only if he could demonstrate prejudice. Townley challenged that decision in federal habeas proceedings, but the District Court denied his petition. The U. S. Court of Appeals for the Ninth Circuit then refused to issue a certificate of appealability (COA). That was error. Because reasonable jurists could debate whether the District Court should have granted habeas relief on Townley's Sixth Amendment claim, the Ninth Circuit should have authorized an appeal. I would grant the petition for a writ of certiorari and summarily reverse the order of the Ninth Circuit denying a COA.

I

In 2006, a group of young men shot (but did not kill)

––––––––––
[1] Like the petition for certiorari and the courts below, I refer to petitioner as "Townley."

Javier Lazaro. Seventeen-year-old Townley and three accomplices were subsequently charged with attempted murder. Two of those accomplices, including Noe Flores, pleaded to reduced charges in exchange for executing declarations that detailed the shooting. To protect Flores from possible retaliation, the trial court sealed the declaration and ordered that it could be opened only if the prosecution called Flores to testify.

Flores was, in fact, called to testify at Townley's trial. Although Townley's defense counsel was given copies of Flores' declaration, he was "unsuccessful in moving to withdraw the order not to discuss the contents or existence of the document with [Townley]." *People* v. *Hernandez*, 101 Cal. Rptr. 3d 414, 422 (App. 2009) (officially depublished). As a result, the trial court "prohibited counsel from sharing the statemen[t] with [Townley], investigators, or other attorneys and further ordered that the statemen[t] be used solely 'for purposes of cross-examination.'" *People* v. *Hernandez*, 53 Cal. 4th 1095, 1101, 273 P. 3d 1113, 1115 (2012).

Townley was convicted of attempted premeditated murder, with enhancements for personal use of a firearm and infliction of great bodily harm. He was sentenced to consecutive sentences of life in prison and 25 years to life.

The California Court of Appeal reversed. Relying on this Court's decision in *Geders* v. *United States*, 425 U. S. 80 (1976), the Court of Appeal explained that "when the government unjustifiably interferes with attorney-client communication, the result may be determined to be a violation of a criminal defendant's constitutional 'right to the assistance of counsel.'" *Hernandez*, 101 Cal. Rptr. 3d, at 423 (quoting *Geders*, 425 U. S., at 91). The court assumed that "'a carefully tailored, limited restriction on the defendant's right to consult counsel is permissible'" when necessary "'to protect a countervailing interest,'" such as witness safety. *Hernandez*, 101 Cal. Rptr. 3d, at 430–431. But "[e]ven under this test, the challenged order exhibit[ed] fatal defects."

*Id.*, at 431.  For one, "there was no express finding or showing of . . . good cause."  *Ibid.*  For another, the order "was not carefully tailored to serve the objective of keeping 'paperwork' out of the hands of prison gangs."  *Ibid.*  Instead, it "appear[ed] to have been tailored to allow the prosecution to produce trial testimony that was a surprise to Townley" and "to impede counsel's investigation of the accuracy of the declaration."  *Ibid.*  The court thus concluded that the trial court's order "unjustifiably infringed on Townley's constitutional right to the effective assistance of counsel."  *Id.,* at 432.  Then, relying on this Court's "clear holding" in *Perry* v. *Leeke*, 488 U. S. 272 (1989), that "'a showing of prejudice is not an essential component of a violation of the rule announced in *Geders*,'" the Court of Appeal held that reversal was necessary regardless of whether Townley could demonstrate prejudice.  *Hernandez*, 101 Cal. Rptr. 3d, at 432 (quoting *Perry*, 488 U. S., at 278–279).

On appeal to the California Supreme Court, the State conceded that the trial court's order "unjustifiably interfered with Townley's access to his attorney."  *Hernandez*, 53 Cal. 4th, at 1102, and n. 2, 273 P. 3d, at 1116, and n. 2.  The sole issue, therefore, was "whether the deprivation of [Townley's] right to consult with his attorney about the Flores declaration was structural error," *i.e.,* an error for which no prejudice inquiry is necessary.  Brief in Opposition 5.  The court concluded that the deprivation was not structural error.  The circumstances of Townley's case were not "comparable in magnitude to those presented in *Geders*," the court reasoned, because defense counsel did not "*entirely* fai[l] to subject the prosecution's case to meaningful adversarial testing."  *Hernandez*, 53 Cal. 4th*,* at 1106, 273 P. 3d, at 1119 (citing *United States* v. *Cronic*, 466 U. S. 648, 659 (1984); internal quotation marks omitted).  The court thus reversed and remanded the case for the Court of Appeal to determine whether, "in accordance with the standard stated in" *Strickland* v. *Washington*, 466 U. S. 668 (1984),

"there is a reasonable probability that, but for the error, the result of the trial would have been different." *Hernandez,* 53 Cal. 4th, at 1111, 273 P. 3d, at 1122. On remand, the Court of Appeal found that Townley failed to demonstrate prejudice, and it affirmed his convictions. See *People* v. *Hernandez*, 2013 WL 3939441, \*1 (Cal. Ct. App., July 29, 2013).

Townley filed a *pro se* petition for a writ of habeas corpus in federal court under 28 U. S. C. §2254. Because the State again "conceded error," the question before the District Court was limited to whether "the California Supreme Court's holding that [the] trial court's order was not structural error—and prejudice had to be shown—was contrary to or an unreasonable application of federal law within the meaning of 28 U. S. C. §2254(d)(1)." 2018 WL 11251904, \*4–\*5 (ND Cal., Dec. 18, 2018). The District Court concluded it was not, reasoning that "[t]he Supreme Court has never held that a limited restriction . . . on the matters that defense counsel could discuss with his client amounts to structural error." *Id.,* at \*5.

Townley sought permission to appeal. The Ninth Circuit denied Townley's request for a COA in a one-page order. See App. to Pet. for Cert. 2 (denying a COA because Townley "has not made a 'substantial showing of the denial of a constitutional right'" (quoting 28 U. S. C. §2253(c)(2))). Townley then petitioned for review in this Court.

## II

A habeas petitioner may not appeal the denial of his habeas petition unless the District Court or Court of Appeals "issues a certificate of appealability." 28 U. S. C. §2253(c)(1); see also *Gonzalez* v. *Thaler*, 565 U. S. 134, 143, n. 5 (2012). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a COA "may issue . . . only if the applicant has made a substantial showing of the denial

of a constitutional right." §2253(c)(2). To make that show-ing, a habeas petitioner must demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues pre-sented were adequate to deserve encouragement to proceed further." *Slack* v. *McDaniel*, 529 U. S. 473, 484 (2000) (in-ternal quotation marks omitted). AEDPA does not "require petitioner[s] to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus." *Miller-El* v. *Cockrell*, 537 U. S. 322, 338 (2003). Rather, "[a]t the COA stage, the only question is whether" the "claim is reasonably debatable." *Buck* v. *Davis*, 580 U. S. \_\_\_, \_\_\_, \_\_\_ (2017) (slip op., at 13, 15).

In this case, the issue confronting the Ninth Circuit was whether reasonable jurists could debate the District Court's disposition of Townley's habeas petition. That question, in turn, depends on whether reasonable jurists could argue that the California Supreme Court's decision contravened or unreasonably applied clearly established federal law. They certainly could.

This Court has decided two cases involving court-ordered interferences with attorney-client communication: *Geders* v. *United States* and *Perry* v. *Leeke*. In *Geders*, the Court held that a defendant's Sixth Amendment right to counsel was violated when the trial court prohibited him from speaking with his attorney during an overnight recess that interrupted his testimony. 425 U. S., at 91. The Court acknowledged that the trial judge had "sequestered all wit-nesses" and, "before each recess," had "instructed the testi-fying witness not to discuss his testimony with anyone." *Id.,* at 87–88. "But the petitioner was not simply a witness; he was also the defendant," and "a defendant in a criminal case must often consult with his attorney during the trial." *Id.,* at 88. The Court thus held that the "sustained barrier to communication between [the] defendant and his lawyer" unconstitutionally "impinged upon [the defendant's] right

to the assistance of counsel guaranteed by the Sixth Amendment." *Id.,* at 91. The Court reversed the defendant's conviction. *Ibid.*

Later, in *Perry*, the Court considered "whether the *Geders* rule applie[d]" to an order directing a defendant not to consult with his attorney during a 15-minute recess in the middle of the defendant's testimony. 488 U. S., at 274. The court below had declined to reverse the defendant's conviction "because the error was not prejudicial." *Id.,* at 276. *Perry* soundly rejected that reasoning. The Court observed that, "consistent with . . . the fundamental importance of the criminal defendant's constitutional right to be represented by counsel," *Geders* had "simply reversed the defendant's conviction without pausing to consider the extent of the actual prejudice."[2] 488 U. S., at 279.

Taken together, *Geders* and *Perry* require automatic reversal whenever a court unjustifiably denies a defendant access to counsel during trial. Here, the State concedes that Townley was wrongly deprived of his right to consult with his counsel about a significant witness declaration before and during that witness' testimony. See Brief in Opposition 5; 2018 WL 11251904, *4. That concession is well founded, as (save for a few exceptions not relevant here) a defendant's "right to consult with his lawyer" is "absolute" and "unrestricted." *Perry*, 488 U. S., at 281, 284. In defending the California Supreme Court's decision, therefore, the State must maintain that some court-ordered interferences with the Sixth Amendment right to counsel are constitutionally tolerable if the defendant fails to demonstrate "a reasonable probability that, but for the error, the result of

_____

[2] *Perry* ultimately affirmed the lower court on the ground that the defendant did not have "a constitutional right to confer with his attorney during the 15-minute break in his testimony." 488 U. S., at 280. Although a defendant "has an absolute right to . . . consultation [with his lawyer] before he begins to testify," he has no "constitutional right to discuss that testimony while it is in process." *Id.,* at 281, 284.

the trial would have been different." *Hernandez*, 53 Cal. 4th, at 1111, 273 P. 3d., at 1122 (citing *Strickland*, 466 U. S., at 686–687). Reasonable jurists could conclude, however, that such an argument contravenes *Geders* (and, by extension, *Perry*), in which the Court "simply reversed the defendant's conviction without pausing to consider the extent of actual prejudice." *Perry*, 488 U. S., at 279. Tellingly, neither the California Supreme Court, nor the District Court, nor the State in its brief before this Court has cited a single case in which a court identified an access-to-counsel error but still required the defendant to demonstrate prejudice.

In declining to apply the automatic-reversal rule adopted in *Geders* and *Perry*, the California Supreme Court relied heavily on *Strickland* v. *Washington* and *United States* v. *Cronic*. But neither case can bear the weight the California Supreme Court assigned to it. *Strickland*, for its part, requires a showing of prejudice where the defendant raises "a claim of 'actual ineffectiveness' of counsel's assistance," *i.e.,* a case in which counsel allegedly "deprive[d] a defendant of the right to effective assistance, simply by failing to render 'adequate legal assistance.'" 466 U. S., at 683, 686. *Strickland* does not address Sixth Amendment claims based on "state interference with counsel's assistance," for which "prejudice is presumed." *Id.*, at 692. This Court recognized that distinction in *Perry*, where it explained that *Strickland* "expressly noted that direct governmental interference with the right to counsel is a different matter" from "the standard for measuring the quality of the lawyer's work." 488 U. S., at 279. Indeed, *Strickland* cited *Geders* for the proposition that the "[g]overnment violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense." *Strickland*, 466 U. S., at 686 (citing *Geders*, 425 U. S. 80). The same is true for *Cronic* (decided the same day as *Strickland*), which also cited

*Geders* in observing that "[t]he Court has uniformly found constitutional error without any showing of prejudice when counsel was . . . prevented from assisting the accused during a critical stage of the proceeding." *Cronic*, 466 U. S., at 659, n. 25.

Finally, even if no reasonable jurist would question the California Supreme Court's dubious assumption that *Strickland*'s actual-prejudice standard applies to some subset of access-to-counsel errors, they could still debate whether the California Supreme Court reasonably placed Townley's case within that category. The California Supreme Court rejected Townley's request for automatic reversal based on its determination that, because the trial court's order "at most prevented defense counsel from fully discussing the anticipated testimony of a single prosecution witness," "the circumstances present" in Townley's case "are not comparable in magnitude to those in *Geders*." *Hernandez*, 53 Cal. 4th, at 1108–1109, 273 P. 3d, at 1120–1121 (citing *Geders*, 425 U. S. 80, and *Cronic*, 466 U. S., at 659, n. 25). But reasonable jurists would rightly wonder why, if the 17-hour bar on communication at issue in *Geders* would prevent an attorney from "perform[ing] the essential functions of trial counsel," *Hernandez*, 53 Cal. 4th, at 1109, 273 P. 3d, at 1121, a total prohibition on discussing a crucial document at all relevant times would not do the same. After all, although "only a small number of discrete documents were off-limits for discussion between [Townley] and his attorney," 2018 WL 11251904, *5, those documents pertained to a witness who the California Supreme Court recognized was "key to the prosecution," *Hernandez*, 53 Cal. 4th, at 1109, 273 P. 3d, at 1121; see also *Hernandez*, 101 Cal. Rptr. 3d, at 433 (describing the witness as "significant").

In the end, regardless of how the Ninth Circuit would resolve Townley's appeal on the merits, it is beyond question

that Townley's claim is, at minimum, "reasonably debata-
ble." *Buck*, 580 U. S., at \_\_\_ (slip op., at 15). The Ninth
Circuit erred in denying Townley a COA, and this Court
should not allow that error to go uncorrected. I respectfully
dissent.